UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED AVERBACH, | Case No. CV 09-3906-RC |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Fred Averbach filed a complaint on June 4, 2009, seeking review of the Commissioner's decision denying his applications for disability benefits. On November 17, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on February 4, 2010.

**BACKGROUND**

On January 7, 2000, plaintiff, who was born on January 7, 1946, first applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, claiming an inability to work since June 19, 1998, due to depression, asthma and kidney

stones.  A.R. 182-86, 190.  After his applications were denied, an administrative hearing was held before Administrative Law Judge Richard L. Leopold ("ALJ Leopold"), A.R. 21-25, 180, 554, 578-82, who issued a decision on August 21, 2001, finding plaintiff is not disabled.  A.R. 12-20, 540-48.  Following the Appeals Council's denial of review, A.R. 6-11, 549-52, plaintiff filed a complaint in this district court challenging the denial of disability benefits to him.  See Averbach v. Barnhart, CV 03-6303-RC ("Averbach I").[1]  On January 9, 2004, pursuant to the parties' stipulation, this Court remanded the matter to the Social Security Administration under sentence four of 42 U.S.C. § 405(g).  A.R. 559-64.

    The Appeals Council, in turn, remanded the matter to ALJ Leopold, who held further administrative proceedings, A.R. 485, and on July 7, 2005, ALJ Leopold issued a decision again finding plaintiff is not disabled.  A.R. 481-88.  Upon review, the Appeals Council determined ALJ Leopold had failed to comply with its order of remand, A.R. 471-75, and ordered another ALJ, Sherwin F. Biesman ("the ALJ"), to hold further administrative proceedings.  A.R. 507-19.  On April 7, 2008, the ALJ issued a decision finding plaintiff is not disabled, A.R. 850-57, and on July 18, 2008, the Appeals Council again remanded the matter to the ALJ for further proceedings.  A.R. 867-70.  On January 21, 2009, the ALJ held further administrative proceedings, A.R. 520-39, and on March 30, 2009, the ALJ again issued a decision finding plaintiff is not disabled.  A.R. 454-64.  The Appeals Council declined review, A.R. 444-45, and the ALJ's decision is now before the Court.

---

[1] Pursuant to Fed. R. Evid. 201, this Court takes judicial notice of relevant documents in Averbach I.

**DISCUSSION**

**I**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine whether his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). In this case, since plaintiff's disability insured status for Title II purposes[2] expired on December 31, 2001,[3]

---

[2] "Title II is an insurance program. Enacted in 1935, it provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need. Title XVI is a welfare program. Enacted in 1972, it provides SSI benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." Bowen v. Galbreath, 485 U.S. 74, 75, 108 S. Ct. 892, 893, 99 L. Ed. 2d 68 (1988) (citations omitted). As such, there is no date last insured for purposes of SSI benefits; rather, benefits are generally payable to individuals eligible for SSI beginning "the month following the month [the individual] filed the application" for benefits. 20 C.F.R. § 416.335.

[3] The ALJ determined plaintiff last met the disability insured status requirements on December 31, 2001, A.R. 459, and

3

1 plaintiff must prove he was either permanently disabled or subject to
2 a condition which became so severe as to disable him prior to that
3 date. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Armstrong
4 v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).

6     The Commissioner has promulgated regulations establishing a five-
7 step sequential evaluation process for the ALJ to follow in a
8 disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step**,
9 the ALJ must determine whether the claimant is currently engaged in
10 substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).
11 If not, in the **Second Step**, the ALJ must determine whether the
12 claimant has a severe impairment or combination of impairments
13 significantly limiting him from performing basic work activities. 20
14 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step**, the ALJ
15 must determine whether the claimant has an impairment or combination
16 of impairments that meets or equals the requirements of the Listing of
17 Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20
18 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step**, the
19 ALJ must determine whether the claimant has sufficient residual
20 functional capacity despite the impairment or various limitations to
21 perform his past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not,
22 in **Step Five**, the burden shifts to the Commissioner to show the
23 claimant can perform other work that exists in significant numbers in
24 the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g).
25 Moreover, where there is evidence of a mental impairment that may
26 prevent a claimant from working, the Commissioner has supplemented the

---

28 plaintiff does not challenge this finding.

4

five-step sequential evaluation process with additional regulations addressing mental impairments.[4] <u>Maier v. Comm'r of the Soc. Sec. Admin.</u>, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since his alleged onset date. (Step One). The ALJ then found plaintiff does not have a severe impairment or combination of impairments; therefore, he is not disabled.[5] (Step Two).

//
//

---

[4] First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3)]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

[5] In reaching this conclusion, the ALJ found plaintiff has "mild" limitations in his activities of daily living, "mild" difficulties in social functioning and maintaining concentration, persistence or pace, and he has experienced no episodes of decompensation. A.R. 403.

**II**

The Step Two inquiry is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290; Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The Supreme Court has recognized that including a severity requirement at Step Two of the sequential evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). However, an overly stringent application of the severity requirement violates the Act by denying disability benefits to claimants who meet the statutory definition of disabled. Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

A severe impairment or combination of impairments within the meaning of Step Two exists when there is more than a minimal effect on an individual's ability to do basic work activities. Webb, 433 F.3d at 686; Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a person's] physical or mental ability to do basic work activities."). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, carrying out, and remembering simple

1 instructions, use of judgment, responding appropriately to
2 supervision, co-workers and usual work situations, and dealing with
3 changes in a routine work setting. 20 C.F.R. §§ 404.1521(b),
4 416.921(b); Webb, 433 F.3d at 686. If the claimant meets his burden
5 of demonstrating he suffers from an impairment affecting his ability
6 to perform basic work activities, "the ALJ *must* find that the
7 impairment is 'severe' and move to the next step in the SSA's five-
8 step process." Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir.
9 2001) (emphasis in original); Webb, 433 F.3d at 686.

11 The ALJ found at Step Two that plaintiff does not have a severe
12 impairment or combination of impairments. However, plaintiff contends
13 this finding is not supported by substantial evidence because the ALJ
14 did not properly consider the medical opinions of plaintiff's treating
15 psychiatrist, William Vicary, M.D., and other medical evidence, did
16 not properly address plaintiff's asthma, erroneously determined
17 plaintiff was not a credible witness, and improperly discounted lay
18 witness testimony.

20 The medical opinions of treating physicians are entitled to
21 special weight because the treating physician "is employed to cure and
22 has a greater opportunity to know and observe the patient as an
23 individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);
24 Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.
25 1999). Therefore, the ALJ must provide clear and convincing reasons
26 for rejecting the uncontroverted opinion of a treating physician, Ryan
27 v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick
28 v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a]

7

1  treating doctor's opinion is contradicted by another doctor, the ALJ
2  may not reject this opinion without providing 'specific and legitimate
3  reasons' supported by substantial evidence in the record." Reddick,
4  157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
5  2008).

   On September 7, 2001, Dr. Vicary, who has treated plaintiff continuously since May 19, **1995**, diagnosed plaintiff as having major depression with the following psychotic features:  delusional behavior; paranoid thinking; inappropriate affect; depression; anhedonia or pervasive loss of interest in almost all activities; appetite disturbance; sleep disturbance; emotional withdrawal or isolation; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; easy distractibility; anxiety with vigilance and scanning; and inflexible or maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress with seclusiveness or autistic thinking, pathologically inappropriate suspiciousness or hostility, oddities of thought, perception, speech and behavior, persistent disturbance of mood or affect, and pathological dependence, passivity, or aggressivity.  A.R. 395-400, 599-603.  Dr. Vicary noted plaintiff was disheveled and unshaven, had long, stringy hair, his mannerisms were giddy and inappropriate, and he was slow and lethargic.  A.R. 395, 599.  Dr. Vicary opined plaintiff has "marked" restrictions in the activities of daily living, "marked" difficulty maintaining social functioning, and "marked" difficulties maintaining concentration, persistence or pace.  A.R. 398, 601.  Dr. Vicary also opined plaintiff

cannot respond appropriately to work, pressure, supervision, and co-workers. A.R. 400, 603. Dr. Vicary concluded plaintiff: has "marked" limitations in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; has "moderate" limitations in his ability to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, work in coordination with or proximity to others without being distracted, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and is not significantly limited in his ability to be aware of normal hazards and take appropriate precautions. A.R. 401-02, 604-05. Dr. Vicary recommended treatment with supportive counseling and psychiatric medication. A.R. 400, 603.

On May 30, **2003**, Dr. Vicary again diagnosed plaintiff as having

major depression, and also diagnosed plaintiff as having obsessive-compulsive disorder with: inappropriate affect; depression; anhedonia or pervasive loss of interest in almost all activities; appetite disturbance; sleep disturbance; emotional withdrawal or isolation; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; easy distractibility; anxiety with apprehensive expectation; recurrent obsessions or compulsions which are a source of marked distress; and inflexible or maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress with oddities of thought, perception, speech and behavior, persistent disturbance of mood or affect, pathological dependence, passivity, or aggressivity, and intense and unstable interpersonal relationships and impulsive and damaging behavior. A.R. 436-41, 639-44. Dr. Vicary again noted plaintiff's appearance was disheveled and unkempt, his mannerisms were odd, and his behavioral patterns were repetitive. A.R. 436, 639. Dr. Vicary opined plaintiff has a "moderate" restriction in the activities of daily living, "marked" difficulty maintaining social functioning, continual difficulties maintaining concentration, persistence or pace, and continual episodes of decompensation. A.R. 440, 643. Dr. Vicary again opined plaintiff cannot respond appropriately to work, pressure, supervision, and co-workers. A.R. 441, 644. Dr. Vicary again concluded plaintiff: has "marked" limitations in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to

1 others without being distracted, complete a normal workday and
2 workweek without interruptions from psychologically-based symptoms and
3 perform at a consistent pace without an unreasonable number and length
4 of rest periods, interact appropriately with the general public, get
5 along with co-workers or peers without distracting them or exhibiting
6 behavioral extremes, maintain socially appropriate behavior and adhere
7 to basic standards of neatness and cleanliness, respond appropriately
8 to changes in the work setting, be aware of normal hazards and take
9 appropriate precautions and set realistic goals or make plans
10 independently of others; has "moderate" limitations in his ability to
11 understand, remember and carry out detailed instructions and accept
12 instructions and respond appropriately to criticism from supervisors;
13 and is not significantly limited in his ability to remember locations
14 and work-like procedures, understand, remember, and carry out very
15 short and simple instructions, make simple work-related decisions, ask
16 simple questions or request assistance, and travel to unfamiliar
17 places or use public transportation.  A.R. 442-43, 645-46.

19      On March 11, **2005**, Dr. Vicary diagnosed plaintiff as having a
20 bipolar disorder with:  inappropriate affect; depression; anhedonia or
21 pervasive loss of interest in almost all activities; appetite
22 disturbance; sleep disturbance; emotional withdrawal or isolation;
23 decreased energy; difficulty concentrating or thinking; easy
24 distractibility; anxiety with autonomic hyperactivity, motor tension,
25 and vigilance and scanning; recurrent severe panic attacks manifested
26 by a sudden, unpredictable onset of intense apprehension, fear,
27 terror, and sense of impending doom occurring on the average of once a
28 week; recurrent obsessions or compulsions which are a source of marked

11

distress; and inflexible or maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress with seclusiveness or autistic thinking, oddities of thought, perception, speech and behavior, and persistent disturbance of mood or affect. A.R. 798-803. Dr. Vicary again noted plaintiff's appearance was disheveled, he had a foolish smile, and his behavioral patterns were odd. A.R. 798. Dr. Vicary opined plaintiff has a "marked" restriction in the activities of daily living, "marked" difficulty maintaining social functioning, "marked" difficulties maintaining concentration, persistence or pace, and "moderate" episodes of decompensation. A.R. 802. Dr. Vicary again opined plaintiff cannot respond appropriately to work, pressure, supervision, and co-workers. A.R. 803. Dr. Vicary concluded plaintiff: has "marked" limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; has "moderate" limitations in his ability to understand and remember detailed instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being distracted, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond

appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others; and is not significantly limited in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions, make simple work-related decisions, ask simple questions or request assistance, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places or use public transportation.  A.R. 796-97.

Finally, on July 19, **2007**, Dr. Vicary again diagnosed plaintiff as having a bipolar disorder with:  inappropriate affect; depression; anhedonia or pervasive loss of interest in almost all activities; emotional withdrawal or isolation; decreased energy; inflated self-esteem; anxiety with apprehensive expectation and vigilance and scanning; inflexible or maladaptive personality traits that cause either significant impairment in social or occupational functioning or subjective distress with seclusiveness or autistic thinking, pathologically inappropriate suspiciousness or hostility, oddities of thought, perception, speech and behavior, persistent disturbance of mood or affect, and pathological dependence, passivity, or aggressivity, and intense and unstable interpersonal relationships and impulsive and damaging behavior.  A.R. 836-40.  Dr. Vicary again noted plaintiff was disheveled, had dirty long hair, his mannerisms were odd, and his behavioral patterns were inappropriate.  A.R. 836.  Dr. Vicary opined plaintiff has a "moderate" restriction in the activities of daily living, "marked" difficulty maintaining social functioning, "marked" difficulties maintaining concentration, persistence or pace, and "marked" episodes of decompensation.  A.R. 839.  Dr. Vicary again

opined plaintiff cannot respond appropriately to work, pressure, supervision, and co-workers. A.R. 840. Dr. Vicary concluded plaintiff: has "marked" limitations in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; has "moderate" limitations in his ability to remember locations and work-like procedures, carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, set realistic goals or make plans independently of others, and tolerate stress in an ordinary work situation; and is not significantly limited in his ability to understand, remember and carry out very short and simple instructions, ask simple questions or request assistance, and travel to unfamiliar places or use public transportation. A.R. 834-35.

Initially, the ALJ found that because Dr. Vicary sees plaintiff "every seven to eight weeks[,] . . . Dr. Vicary's status as a treating

physician [is] questionable[.]"⁶  A.R. 856.  However, this is not so. To the contrary, Dr. Vicary has provided medical care to plaintiff for more than 12 years, and has prescribed medication to plaintiff on a regular basis for plaintiff's psychiatric impairments.  See, e.g., 395-402, 407-34, 436-43, 587-88, 598-605, 608-37, 639-46, 704-27, 792-811, 829-41.  Thus, Dr. Vicary is clearly a treating physician.  See Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (physician who saw claimant five times in three years for treatment was treating physician); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (physician who saw claimant twice within a 14-month period and prescribed medication to him was treating physician).  Second, as both plaintiff and Dr. Vicary explained, plaintiff is seen as "often as realistically possible" at the free clinic he attends,⁷ "which is overwhelmed [with] patients and understaffed in volunteer doctors" such as Dr. Vicary.  A.R. 524, 884.  Thus, the ALJ's additional finding that plaintiff's "condition is not as disabling as Dr. Vicary has indicated[,]" A.R. 856, which was based on Dr. Vicary seeing plaintiff only "every seven to eight weeks," is completely improper.

---

⁶ The ALJ made his findings regarding Dr. Vicary in his April 7, 2008 decision, A.R. 856, and, in his more recent 2009 decision, simply stated that "[a]s for the opinion evidence, the undersigned's April 7, 2008 decision discussed the weight accorded to Dr. Vicary's assessments.  This determination has been unchallenged by the District Court; and therefore, further discussion is not required."  A.R. 463.  This is an odd statement since this Court had not reviewed the ALJ's 2008 decision at the time the ALJ made this statement; nevertheless, the Court will treat the ALJ's 2009 decision as incorporating by reference the 2008 discussion of Dr. Vicary's opinions.  Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 n. 10 (C.D. Cal. 2006).

⁷ Plaintiff lives in his car and survives by panhandling. A.R. 511, 516, 522-23, 527-28.

See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (Disability "'benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.'" (citation omitted)); Gamble v. Chater, 68 F.3d 319, 322 (9th Cir. 1995) ("'[M]any Americans are without the means or the opportunity to obtain necessary medical care.  Social Security disability and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves.  It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)).

   The ALJ also accorded "little weight" to Dr. Vicary's opinions, finding they were "premature, speculative and conjectural" and "[t]here are inconsistencies between the opinion[s] and clinical findings and inconsistencies between the opinion[s] and treatment." A.R. 856 (citations omitted).  However, the ALJ does not explain how the opinions were "premature, speculative and conjectural" and does not identify any inconsistencies.  Therefore, these reasons are grossly "conclusory [and] . . . will not justify [the ALJ's] rejection of [Dr. Vicary's] medical opinion[s]." Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999); Burger v. Astrue, 536 F. Supp. 2d 1182, 1187 (C.D. Cal. 2008).  Similarly, the ALJ found Dr. Vicary did not "provide an assessment of the claimant's residual functional capacity, which is compatible with the record as a whole." A.R. 856.  To the extent this finding criticizes Dr. Vicary's opinions as inconsistent with other medical opinions, it is again

16

grossly conclusory since the ALJ does not cite any portions of the record with contrary findings or any incompatible medical opinions, and to the extent this finding suggests Dr. Vicary did not provide any assessment of plaintiff's limitations, it is clearly incorrect, as documented above.

Finally, the ALJ rejected Dr. Vicary's opinions because they "do[] not show objective findings other than the unsupported conclusion that the claimant suffers marked limitations in various areas of functioning." A.R. 856. However,

> [c]ourts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness. . . . [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

17

Sanchez v. Apfel, 85 F. Supp. 2d 986, 992 (C.D. Cal. 2000) (citations omitted); Christensen v. Bowen, 633 F. Supp. 1214, 1220-21 (N.D. Cal. 1986). Therefore, this also is not a specific and legitimate reason for rejecting Dr. Vicary's opinions.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion[s] of a treating . . . physician, [this Court] credit[s] th[e] opinion[s] 'as a matter of law.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996)(citations omitted); Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006). Here, properly crediting Dr. Vicary's opinions, it is clear plaintiff has a severe mental impairment, and the ALJ's decision to the contrary is not supported by substantial evidence. Edlund, 253 F.3d at 1159-60.

### III

This Court has discretion to award disability benefits to a plaintiff when there is no need to remand the case for additional factual findings. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004). Here, because Dr. Vicary's opinions, "when [they are] given the effect required by law, demonstrate[] that [plaintiff] meets or equals Listing § 12.04,"[8] the record is

---

[8] At the time of the most recent administrative hearing, Listing 12.04 provided, in pertinent part:

*Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. [¶] The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied. [¶] A. Medically documented persistence, either continuous or intermittent, of one of the following: [¶] 1. Depressive syndrome characterized by at least four of the following: [¶] a. Anhedonia or pervasive loss of interest in almost all activities; or [¶] b. Appetite disturbance with change in weight; or [¶] c. Sleep disturbance; or [¶] d. Psychomotor agitation or retardation; or [¶] e. Decreased energy; [¶] or f. Feelings of guilt or worthlessness; or [¶] g. Difficulty concentrating or thinking; or [¶] h. Thoughts of suicide; or [¶] i. Hallucinations, delusions, or paranoid thinking . . . 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); [¶] And [¶] B. Resulting in at least two of the following: [¶] 1. Marked restriction of activities of daily living; or [¶] 2. Marked difficulties in maintaining social functioning; or [¶] 3. marked difficulties in maintaining concentration, persistence or pace; or [¶] 4. Repeated episodes of decompensation, each of extended duration. [¶] OR [¶] C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: [¶] 1. Repeated episodes of decompensation, each of extended duration; or [¶] 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [¶] 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

1 complete, and under Step Three, both Title II[9] and SSI disability
2 benefits should be awarded to plaintiff.[10]  Lester, 81 F.3d at 834;
3 Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir. 1993).

**ORDER**

IT IS ORDERED that plaintiff's request for relief is granted, and the Commissioner shall award both Title II and SSI disability benefits to plaintiff.

DATED:  August 6, 2010          /S/ ROSALYN M. CHAPMAN
                                ROSALYN M. CHAPMAN
                                UNITED STATES MAGISTRATE JUDGE

---

20 C.F.R. § 404, Subpart P, App. 1, Listing 12.04.

[9] Since Dr. Vicary found plaintiff disabled prior to his date last insured for Title II purposes, plaintiff is entitled to both Title II and SSI benefits.

[10] Having reached this conclusion, it is not necessary to address the other arguments plaintiff raises.

R&R-MDO\09-3906.mdo
8/6/10